# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-1402

BRENDA O'NEAL,

*Plaintiff-Appellant,*

v.

CITY OF CHICAGO and
JERRY ROBINSON,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 8451—**Harry D. Leinenweber**, *Judge.*

_____

ARGUED OCTOBER 27, 2004—DECIDED DECEMBER 20, 2004

_____

Before FLAUM, *Chief Judge,* and MANION and WILLIAMS,
*Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiff-appellant Brenda O'Neal,
a black woman, was a sergeant in the Chicago Police
Department. In May 2002, she was transferred from her
position as "administrative sergeant" in the Narcotics Unit
to the position of "beat sergeant" in one of the districts.
O'Neal brought suit against the City of Chicago and Jerry
Robinson, Chief of the Organized Crime Division, alleging
that this transfer was the result of racial and gender dis-

crimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. §§ 1981 and 1983. The district court granted summary judgment to defendants on all claims. O'Neal appeals the grant of summary judgment only as to her gender discrimination claim. For the reasons stated herein, we affirm.

## I. Background

O'Neal began her tenure with the Chicago Police Department in June 1991. She was hired as a probationary police officer and attained career service status a year later. After working in several police districts, O'Neal was promoted to the position of sergeant in 2001. In February 2002, O'Neal applied for and obtained a position as administrative sergeant in the Narcotics and Gangs Investigations Section of the Organized Crime Division ("Narcotics Unit"). Chief Robinson reviewed her application and approved her transfer into the Narcotics Unit.

Three months later, in May 2002, upon Robinson's recommendation, O'Neal was transferred from her position in the Narcotics Unit to the position of beat sergeant in one of the districts. She was replaced by Sergeant Robert Roman, a male officer. Defendants claim this transfer was a security precaution taken in response to a rumor that, several years earlier, O'Neal had dated Reginald Lee, a former Chicago police officer who was convicted of selling narcotics in 1994. The rumor of O'Neal's alleged relationship with Lee began circulating around the time of Lee's release from prison. O'Neal denies having had a personal relationship with Lee. She claims that Robinson made the decision to transfer her even though he was aware at the time that the rumor had no basis in fact.

O'Neal filed suit on November 20, 2002. On January 22, 2004, the district court granted summary judgment to defendants, finding that, even when construed in a light

most favorable to O'Neal, the evidence did not establish that O'Neal suffered a legally cognizable adverse employment action.

## II. Discussion

Summary judgment is appropriate where, reviewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact that must be decided by a jury. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252-55 (1986); *Laborers' Pension Fund v. RES Envtl. Servs., Inc.,* 377 F.3d 735, 737 (7th Cir. 2004). We review the district court's grant of summary judgment de novo. *Bell v. Duperrault,* 367 F.3d 703, 707 (7th Cir. 2004).

O'Neal sought to establish her claim of gender discrimination under the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). To advance a prima facie case of gender discrimination, O'Neal must establish four elements: (1) she is a member of a protected class; (2) she performed her job satisfactorily; (3) she suffered an adverse employment action; and (4) defendants treated similarly situated employees outside her class more favorably. *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.,* 243 F.3d 336, 341 (7th Cir. 2001). Only after plaintiff establishes a prima facie case does the burden shift to defendants to articulate a nondiscriminatory justification for the action. Once defendants do so, plaintiff must present sufficient evidence to create a triable issue concerning whether this justification is pretextual. *Id.* (citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 508 (1993)).

Although it may be argued that Robinson was overzealous in transferring O'Neal, we need not reach the questions of nondiscriminatory justification and pretext because the evidence presented by O'Neal does not support a prima facie case of gender discrimination. Specifically, O'Neal has not

presented sufficient evidence of the third element of the prima facie case, a materially adverse employment action.

O'Neal argues that her transfer from the Narcotics Unit to the position of beat sergeant was an adverse employment action. Though it is undisputed that the two positions hold the same rank within the police department and receive the same pay and benefits, O'Neal argues that the transfer effectively was a demotion.

"While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action." *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 712 (7th Cir. 2000) (quoting *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)). "Otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" *Smart*, 89 F.3d at 441 (quoting *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996)).

This Court has articulated three general categories of materially adverse employment actions actionable under Title VII: (1) cases in which the employee's compensation, fringe benefits, or other financial terms of employment are diminished, including termination; (2) cases in which a nominally lateral transfer with no change in financial terms significantly reduces the employee's career prospects by preventing her from using her skills and experience, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) cases in which the employee is not moved to a different job or the skill requirements of her present job altered, but the conditions in which she works are changed in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in her workplace environment. *Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 744-45 (7th Cir. 2002) (citations omitted). We noted that cases in the second category involve a future, rather than present harm. *Id.* at 744. We also cautioned that they are to be distinguished from cases

involving "a purely lateral transfer, that is, a transfer that does not involve a demotion in form or substance." *Id.* (quoting *Williams*, 85 F.3d at 274). "A transfer involving no reduction in pay and no more than a minor change in working conditions will not do, either." *Id.*

O'Neal argues that her transfer constitutes an adverse employment action for several reasons. First, she asserts that the transfer negatively affected her chances of promotion because positions in the Narcotics Unit are more prestigious than those in the districts. O'Neal also contends that the transfer marred her reputation "by implicitly accepting the rumor, despite the evidence that [she] never had the relationship in question." (Appellant's Br. at 17.) Because of the transfer, O'Neal asserts, her opportunity for promotion was "limited due to the irreparable harm on her professional credibility and the ability to achieve higher ranks." (*Id.* at 17-18.)

In support of this assertion, however, O'Neal offers only speculation, which is insufficient to defeat summary judgment. *Bell*, 367 F.3d at 707. O'Neal presents no objective evidence that sergeants in the Narcotics Unit are more likely to be promoted than sergeants working in the districts. O'Neal's strongest evidence that her career prospects were harmed is the testimony of Commander Wiberg, her supervisor in the Narcotics Unit, who testified:

> Reputations are very precious within the police department. Ironically, when you move from one unit to another people know who you are before you get there based on your reputation, and especially if you are a supervisor. And as you rise through the ranks, your good name carries a great deal of weight, and it would have some bearing.

(R. 23, Vol. II at 43.)

Wiberg did not testify, however, that O'Neal could not or would not be promoted because of the transfer. Even if the rumor did tarnish her reputation, which could ultimately

diminish her chances for promotion, O'Neal has presented no evidence that the *transfer*, the employment action at issue, rather than the rumor itself, caused this harm. Moreover, despite her allegation that the transfer lent credibility to the rumor about her relationship with Lee, O'Neal has presented no evidence that Robinson propagated or endorsed the rumor. Nor has she alleged that the rumor rose to the level of harassment or created a hostile work environment.

O'Neal also contends that the transfer negatively altered the conditions of her employment. She claims that the position in the Narcotics Unit gave her increased opportunities for overtime pay and more supervisory responsibilities than her district position. O'Neal also complains that the transfer deprived her of the perks associated with the administrative position, including the use of a work-provided cellular telephone, pager, vehicle, and parking space, as well as having most weekends and holidays off.

Although she claims that the transfer resulted in less overtime, O'Neal has adduced no evidence that she actually took home less pay as a beat sergeant. The remaining discrepancies do not render the transfer an adverse employment action. O'Neal has not presented evidence that her supervisory responsibilities were significantly reduced because of the transfer. As the administrative sergeant of the Narcotics Unit, she was responsible for the daily operation of the unit, scheduling twenty security employees, attending meetings, supervising employees on the night shift, and performing tasks assigned by the commander. As a beat sergeant, however, O'Neal also had significant supervisory responsibilities, overseeing sixteen officers responding to calls in the field. While O'Neal claims she was subject to more constant monitoring from superiors as a beat sergeant, she does not dispute that she reported directly to Commander Wiberg in the Narcotics Unit.

O'Neal's complaints about being relegated to the "random tasks of supervising beat officers" and losing a flexible work schedule and the ability to have weekends and holidays off also fall short of an adverse employment action. These responsibilities are well within the reasonable scope of her duties as a sergeant in the Chicago Police Department, and requiring her to perform them does not constitute an adverse employment action for which federal law provides a remedy. *See Conley*, 215 F.3d at 712 (assigning plaintiff to paint the pump room for several months where other maintenance workers received similar assignments was "well within the scope of normal activities for a Village maintenance worker" and was not an adverse employment action); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir. 1989) (upholding district court's determination that plaintiff suffered no adverse employment action where she was reassigned to dual principalship in different schools for more pay under longer term contract).

By definition, any lateral job transfer will result in changes to an employee's job responsibilities and work conditions. To sustain a federal employment discrimination suit, a plaintiff must show something more than the ordinary difficulties associated with a job transfer. *See Conley*, 215 F.3d at 712 ("A materially adverse change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.") (quoting *Johnson v. City of Fort Wayne*, 91 F.3d 922, 932 (7th Cir. 1996)). As we have stated before, "being shifted to an essentially equivalent job that [an employee does] not happen to like as much does not a Title VII claim create." *Place v. Abbott Labs.*, 215 F.3d 803, 810 (7th Cir. 2000) (rejecting plaintiff's argument that being "moved from an interesting job she liked that involved overseeing several other people to a boring job she didn't like and that lacked any supervisory duties" was an adverse employment action); *McKenzie v. Milwaukee County*, 381 F.3d 619, 625-26 (7th Cir. 2004)

(finding that police officer's transfer from position as undercover detective in Drug Enforcement Unit to non-investigatory position in courts and auxiliary bureau did not constitute an actionable adverse employment action).

O'Neal's complaints about the transfer reveal only a "purely subjective preference for one position over another," which does not "justify trundling out the heavy artillery of federal antidiscrimination law." *Herrnreiter*, 315 F.3d at 745. In *Herrnreiter*, this Court determined that the plaintiff's transfer from his position as an investigator to that of an auditor was not an actionable adverse employment action because "the two jobs were equivalent other than in idiosyncratic terms." *Id.* By contrast, in our recent decision in *Tart v. Illinois Power Company*, 366 F.3d 461 (7th Cir. 2004), we held that the jury had been reasonable in determining that the plaintiffs' reassignment was an adverse employment action because it placed them in positions that were objectively inferior to their previous jobs. Contrasting the reassignment in *Tart* from the transfer in *Herrnreiter*, we noted:

> Few workers in today's job market would choose to give up access to computers so they could spend the winter on trenchers and with shovels, digging the holes that made way for other workers to complete the skilled part of the labor. This preference is not idiosyncratic; it is universal.

*Tart*, 366 F.3d at 473-74. O'Neal's transfer from the Narcotics Unit to a district position comes nowhere close to the adverse reassignments at issue in *Tart*.

Accordingly, O'Neal has failed to establish a prima facie case of discrimination as a matter of law.

### III. Conclusion

For the foregoing reasons, the decision of the district court is AFFIRMED.

No. 04-1402 9

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*