NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 25, 2011[*]
Decided June 1, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

No. 11-1314

| | |
|---|---|
| GREGORY E. SMITH, SR., | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Western District of Wisconsin. |
| | |
| *v.* | No. 09-cv-684-bbc |
| | |
| CAPITAL CARTAGE, | Barbara B. Crabb, |
| INCORPORATED, | *Judge.* |
| *Defendant-Appellee.* | |

**O R D E R**

Gregory Smith claims that Capital Cartage has engaged in workplace discrimination due to his race and age. The district court granted summary judgment for Capital Cartage, and Smith appeals. We affirm the judgment.

Except as noted, the evidence at summary judgment, which we construe in Smith's favor, was undisputed. *See Burks v. Wisc. Dep't of Transp.*, 464 F.3d 744, 750 (7th Cir. 2006).

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(c).

Smith, who is 46 years old and black, began working part time for Capital Cartage, a moving and storage company, in October 1998. He was hired as a driver's helper, to assist with packing, loading, and unloading moving vans. Driver positions are higher than driver's helpers within the structure of the company, and Capital Cartage also distinguishes between part-time and full-time employees for purposes of certain benefits. Full-time employees are given priority for all jobs, and an employee's availability to work is one factor that determines salaries and raises, along with experience, skill, performance, and job position. Full-time employees are those who work an average of 30 to 40 hours a week. Every year since he started, Smith averaged fewer than 30 hours, typically 20 to 24.

Capital Cartage contends that Smith was not the most reliable employee. He was frequently absent, sometimes taking personal or sick leave but in many instances simply failing to show up for work, walking off jobs, or taking unauthorized vacation leave. In June 2007, for example, the company informed employees that it would not grant vacation time during the summer months, which were the company's busiest. Smith knew about the restriction, yet in July he still requested two weeks off to attend a family reunion in August. Mary Hermanson, the company president, denied his request. She told Smith that Capital Cartage needed dependable staff and warned him that he would jeopardize his job if he took unauthorized leave. She also said that the company needed to replace Smith quickly if he wasn't going to work. Her written notice pointed out that so far that year Smith had worked only 114 out of 208 possible days. He had taken 24 hours of vacation leave and 7 personal days, failed to show up for work 10 times, and refused to work on 4 other days. Smith nevertheless took 11 days of unapproved leave in August but was allowed to keep his job.

After Smith was back from that vacation, Capital Cartage rehired two full-time drivers. According to Smith, this is when the discrimination started because the new employees, who are both white and younger, were paid more (Smith was making $12.25 per hour at the time) and given more hours. Doug Cooley earned $13.50 per hour and is 17 years younger. Eric Perkins made $14.50 and is 5 years younger.

On November 12, 2007, Smith wrote to Hermanson complaining of race and age discrimination. Among other things he protested the lack of vacation pay and the decision to rehire Cooley and Perkins at a higher rate with less seniority (and to give them new company jackets to boot). All three men did "the same type of work," Smith reasoned, so the differing treatment could only be the result of age and race discrimination. Hermanson responded that the higher pay reflected that Cooley and Perkins were working full time, and she said that a jacket in Smith's size wasn't available when they were given out, though one had been ordered for Smith. He got the jacket before the month's end, along with a promotion to part-time driver at $15.00 per hour, making him the highest paid

hourly employee. Smith maintains, however, that he already had been working as a driver since he first took on occasional driving duties.

Then in January 2008 the company's insurance carrier gave written notice that it would cancel coverage unless Smith was removed as a driver. Capital Cartage had given the carrier a roster of drivers for an annual check of their driving records. The insurer discovered that Smith had racked up two convictions for driving while intoxicated and another for speeding in excess of 20 miles per hour above the posted limit. His license also had been suspended twice for blood-alcohol content violations. Hermanson explained the situation to Smith and demoted him to driver's helper, but still at $15.00 per hour.

Now unable to drive, Smith no longer had priority for jobs. During the winter months work was scarce, and drivers and full-time employees had the first shot at available assignments. Yet despite his repeated requests for more hours, Smith was upset when, on Martin Luther King, Jr.'s holiday, the company switched him from a 4-hour job to one lasting 10 hours. When he asked why, management said that Cooley, who was the driver for the shorter job, did not want to work with him because of a personal conflict and that the company also was trying to accommodate his request for more hours. According to Smith, the switch constituted race discrimination because he was made to work longer on a "holiday of his heritage."

The record is unclear concerning when Smith last worked for Capital Cartage, but the parties agree that his regular employment ended in February 2008. On February 8, according to the company, Smith called to say he would be late for a scheduled job but then never showed up. Smith says he went to work, but Capital Cartage produced attendance records noting the no-show. Smith also disputes the company's contention that he did not show up the following day; according to Smith, he went in but was told that he had been temporarily laid off until more work was available. Yet after that Smith continued to work occasional jobs for Capital Cartage.

After Smith exhausted his administrative remedies, he filed this lawsuit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e to 2000e-17. As relevant here, Smith claimed that Capital Cartage discriminated against him based on his race and age when it gave Cooley and Perkins higher salaries, more hours, and new jackets, and that his job switch on Martin Luther King, Jr. Day constituted race discrimination.

In granting summary judgment for Capital Cartage, the district court reasoned that Smith did not have direct evidence of either race or age discrimination, or sufficient evidence to establish a prima facie case under the burden-shifting method of *McDonnell*

*Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). That method required proof that Smith belonged to a protected class, was meeting Capital Cartage's legitimate job expectations, had suffered an adverse employment action, and was treated worse than similarly situated employees outside the protected class. *Id.*; *Everroad v. Scott Truck Sys., Inc.*, 604 F.3d 471, 477 (7th Cir. 2010). The court concluded that Smith had not identified any similarly situated employee who was paid more or given more hours. And, the court continued, no other action taken against Smith was materially adverse.

On appeal Smith does not make any effort to impugn the district court's judgment or explain why he thinks reversal is required. In fact, his brief is almost exactly the same as the memorandum he submitted in opposition to Capital Cartage's motion for summary judgment. His contentions were insufficient to establish a genuine issue of material fact in the district court, and they are no more effective or convincing on appeal. While we construe pro se filings liberally, no litigant is excused from the requirement that he articulate a cogent reason for disturbing the district court's decision. *Haxhiu v. Mukasey*, 519 F.3d 685, 691 (7th Cir. 2008); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001). Smith has not done so.

Even if Smith had argued generally that the district court's decision was wrong, without identifying a particular error, we agree with the court's conclusion that he did not establish a prima facie case for either race or age discrimination. Although Smith maintained that Cooley and Perkins were comparable employees, they were not similarly situated because, even if Smith had been promoted to driver in 2005, both Cooley and Perkins worked full time and neither had attendance problems like Smith. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (noting that, to be similarly situated, litigant must show that someone is "directly comparable to him in all material respects"). Moreover, Smith's documented attendance problems and unreliability meant that he was not meeting Capital Cartage's legitimate expectations. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 761 (7th Cir. 2001). As for the switched assignment and the delay in receiving a new jacket, these did not constitute adverse employment actions because the job switch actually benefitted Smith, who received more hours and more pay as a result, and the jacket was a trivial matter. *See O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). Finally, we note that Smith has accused Hermanson of making a racial slur in her affidavit in support of the company's motion for summary judgment. Hermanson, in describing one of Smith's absences, commented that when he had called in sick, she believed his speech was slurred and she "could tell that he was under the influence of alcohol." Nothing about her statement, however, suggests discrimination, nor does it have anything to do with the timeline of events involved in this litigation.

Accordingly, we **AFFIRM** the district court's judgment.