# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 03-1489

CHICAGO DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, *et al.*,

*Plaintiffs-Appellants*,

*v.*

REINKE INSULATION COMPANY and
K. REINKE, JR., & COMPANY,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 01 C 8102—**Wayne R. Andersen**, *Judge*.

_____

ARGUED SEPTEMBER 11, 2003—DECIDED OCTOBER 17, 2003

_____

Before FLAUM, *Chief Judge*, and POSNER and
EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*.  A collective bargaining
agreement to which Reinke Insulation subscribed required
it to contribute to pension and welfare funds in proportion
to the number of compensable hours the carpenters who
installed the insulation had worked. In 2001 the funds con-
ducted an audit and concluded that Reinke owed about

$175,000, most of which was attributable to the firm's failure to remit contributions based on the carpenters' travel time. Workers who blow loose insulation into the space between walls are paid on a portal-to-portal basis, and the auditor did not find fault with Reinke's remittances for them. But carpenters who install preformed "batts" of insulation are paid, not for actual time in transit (as the "blow" workers are), but for "drive time" that depends on how far the job site is from the employer's supply depot. Moreover, although a worker who drives to and from the depot in order to pick up tools and the batts of insulation receives drive time, carpenters who commute to the jobs from home are paid only for time at the installation sites. (So the district court understood the agreement; the funds do not contest this reading on appeal.)

These rules make it important to separate actual time at work from the imputed "drive time," and the collective bargaining agreement requires every employee to complete and sign, and the employer to countersign, a form (the "Uniform Daily Time Sheet" or UDT) that separately states actual time at work and imputed drive time (plus "load time," something we need not consider). Reinke's workers often failed to fill out their UDTs and were content to sign blank pages that Reinke's managers sometimes finished, but sometimes left blank or incomplete. Instead of coercing the carpenters to do more paperwork (the collective bargaining agreement allowed employers to fire any worker who failed to perform this task), Reinke calculated hours itself. It started with the estimates on which its bids for the work had been based and made adjustments in light of oral reports from workers after the jobs' completion. Reinke used these forms, which the parties call "green sheets" because they were printed on green paper, both to pay the carpenters and to calculate what it owed the funds.

Reinke's practice, which has led to this litigation, was to record total hours but not their breakdown. The auditor as-

sumed that all of the time shown had been spent at the job site, and that Reinke thus had failed to compensate its employees (and remit to the funds) for drive time. The district judge held a bench trial and, after hearing testimony about how Reinke compiled the green sheets, concluded that they did include drive time. On this appeal the funds ask us to hold that this conclusion was clearly erroneous—though they also argue that the judge made two legal errors, and we start with these contentions.

One error, according to the funds, was letting Reinke get away with failing to use the UDTs specified by the collective bargaining agreement. The district judge rejected this argument on the ground that Reinke possessed signed UDTs for every day's work by every carpenter; that they may have been blank does not matter, the judge found, because the agreement required signatures but did not say what data the forms must contain. This is not altogether convincing; a requirement that *timesheets* be signed implies a requirement that *time* (and not just a signature) be recorded. Yet the funds are not parties to the collective bargaining agreement; they are third-party beneficiaries. They are entitled to the benefit of writings that document compensable time but not to punctilious compliance with matters of form. The district judge found that the green sheets are reliable, contemporaneous records; and, if that is so, then the funds have no substantive complaint. Whether they might be entitled to equitable relief that would require employers to keep records better than Reinke's green sheets is neither here nor there, as the only relief sought in this action is money. (They could not get prospective relief against Reinke itself, because the collective bargaining agreement has expired and Reinke did not sign a new one.)

The funds' other legal argument is that they were entitled to the benefit of an evidentiary presumption. When an employer keeps substandard records—a good description of

the green sheets—the court should presume that the auditor's calculations are correct and should shift the burden to the employer. Burden-shifting approaches of one kind or another are common in employment law. See, e.g., *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). We have sometimes said that they may be appropriate in pension and welfare cases—though the particular case on which the funds rely, *Laborers Pension Fund v. A&C Environmental, Inc.*, 301 F.3d 768 (7th Cir. 2002), held that the employer's records were adequate. Other circuits occasionally have placed some burden on the employer, however, see, e.g., *Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692 (6th Cir. 1994); *Brick Masons Pension Fund v. Industrial Fence & Supply, Inc.*, 839 F.2d 1333 (9th Cir. 1988); *Combs v. King*, 764 F.3d 818 (11th Cir. 1985), and the funds say that the district judge should have done so here.

The funds assume that, if some burden should be placed on the employer, it is the burden of persuasion. They do not explain why. *McDonnell Douglas*, the progenitor of burden-shifting approaches in federal employment cases, shifts to the employer a burden of *explanation* once the employee establishes a *prima facie* case of discrimination. The employer must articulate non-discriminatory reasons for its action, and if this is done then the employee must shoulder the burden of persuasion. See, e.g., *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). By parallel, once a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the fund are nonetheless proper. If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment. Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment. If there is any reason why employ-

ers should bear the burden of persuasion in pension and welfare cases, but not in discrimination cases, the funds do not supply it.

What is more, the whole burden-shifting apparatus under *McDonnell Douglas* is designed for pretrial management. It affects entitlement to summary judgment and may influence discovery. Once a case comes to trial, however, the burden-shifting structure has served its function and falls away. See *Postal Service Board of Governors v. Aikens*, 460 U.S. 711 (1983); *Achor v. Riverside Golf Club*, 117 F.3d 339 (7th Cir. 1997). This case was tried: the employer produced an explanation and backed it up with evidence that the district judge believed. The only question that matters thus is whether the district judge's decision is clearly erroneous.

It is hard to see how it could be. Lantz Rakow, Reinke's general manager, testified about how he created the green sheets for use in making bids and adjusted them after the jobs were completed. Rakow told the court that he always included drive time in the estimate, using the rule prescribed by the collective bargaining agreement (30 minutes' drive time if the job is within 15 miles of the warehouse, 60 minutes if farther). The district judge believed him, and a credibility decision is almost impossible to upset. See *Anderson v. Bessemer City*, 470 U.S. 564 (1985). The funds do not have any documentary evidence that conflicts with Reinke's testimony; for that matter, the funds do not have any testimony that conflicts with Reinke's. The auditor did not interview even one carpenter about hours actually worked. Nor did the funds present the testimony of any carpenter. Evidence from the workers that the time on the green sheets reflected only hours at the job site could have made a difference. But there was no such evidence, so it is hardly surprising that the judge believed Reinke.

What one can say for the funds' position is that the green sheets usually showed that all of the workers assigned to

a given project were credited with the same number of hours. This seems odd because, on the district judge's interpretation of the agreement, only one carpenter (the one who hauled the materials to the job site in a company truck) was entitled to drive time. Why wouldn't this employee be paid for an extra 30 or 60 minutes? Reinke's answer at trial was that it allowed the employees to allocate drive time (indeed *any* time) among themselves as they liked, and Rakow suggested that the driver usually shared his drive time with his colleagues to make up for the fact that he alone had use of a company truck, which he was free to take home. The district judge believed this explanation. Now maybe Reinke's tolerant approach plants the seeds of trouble. The Fair Labor Standards Act requires *accurate* recording of time, employee by employee; how else can the employer know when overtime has kicked in? Correct apportionment of hours among the workers also may matter to qualification for pension and welfare benefits, which under multi-employer plans such as these often require minimum numbers of hours worked to receive credit for a week, month, or quarter. Employers willing to allow workers to reallocate time among themselves may be inviting fraud on the pension and welfare plans, so that employees who did not work enough hours nonetheless appear to qualify for benefits. But the funds do not contend that any reallocation of the drive time could have affected qualification levels for any of Reinke's carpenters, so we need not pursue this possibility. The only question at hand is whether the green sheets included drive time. The district court's affirmative answer is not clearly erroneous, so the judgment is affirmed.

AFFIRMED

No. 03-1489                                    7

A true Copy:

   Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*