# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-3360

LABORERS' PENSION FUND, et al.,

*Plaintiffs-Appellees,*

v.

RES ENVIRONMENTAL SERVICES, INC.,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 72—**William J. Hibbler**, *Judge.*

———————

ARGUED JUNE 9, 2004—DECIDED JULY 29, 2004

———————

Before FLAUM, *Chief Judge*, and BAUER and EVANS, *Circuit Judges.*

FLAUM, *Chief Judge*. This appeal calls upon us to apply the familiar principle that conclusory and immaterial statements contained in an affidavit are insufficient to bar summary judgment. Defendant RES Environmental Services, Inc. ("RES"), relying exclusively on an affidavit submitted by its company owner, seeks reversal of the district court's decision granting summary judgment to Plaintiffs, Laborers' Pension Fund and Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago

and Vicinity (the "Funds"). The Funds brought this action against RES pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1132 *et seq.* ("ERISA") and Labor Management Relations Act of 1947, 29 U.S.C. §§ 185 *et seq.* ("LMRA") seeking to collect delinquent employee benefit contributions required under a collective bargaining agreement negotiated between RES and its employees' union. For the reasons stated in this opinion, we affirm the judgment of the district court.

## I. Background

The Funds are multi-employer trust funds that provide fringe benefits to RES's employees. RES has been operating since 1992 and is primarily in the business of performing asbestos abatement work. RES is party to a collective bargaining agreement (the "CBA") that was negotiated between RES and its employees' union. The CBA requires RES to make regular contributions to the Funds on behalf of its employees covered therein for pension, health, and welfare benefits and to submit monthly remittance reports identifying each covered employee and its corresponding contribution. Additionally, the CBA incorporates the Funds' respective Trust Agreements, which require RES to pay liquidated damages and interest if RES's contributions become delinquent.

In order to determine if RES was satisfying its contribution requirements under the CBA, the Funds designated two firms to audit RES's books and records. The first audit, referred to as the Wolf Report, focused on the period of July 1, 1994 to December 31, 1997 and found that RES owed $74,452.66 in delinquent contributions, accrued interest, liquidated damages, and audit costs. The second audit, referred to as the Graff Report, covered the period of January 1, 1998 to July 31, 2001 and found that RES owed $222,441.68 in delinquent contributions, accrued interest,

liquidated damages, and audit costs. Negotiations between the Funds and RES took place once the audits were completed. The parties reached an agreement regarding the Wolf Report, with RES agreeing to pay $4,011.69. However, the Funds were not willing to reduce the second audit's total.

This lawsuit presents RES's challenges to the Graff Report and its findings. RES claims that the Graff Report improperly includes employees who are not covered by the CBA. RES also contends that the Graff Report includes hours relating to work not within the scope of the CBA. To support these claims, RES offers the affidavit of its owner, Wiley Stewart. The district court rejected RES's arguments, finding that RES failed to present a genuine issue of material fact as to all issues in dispute.

## II. Discussion

We review the district court's grant of summary judgment *de novo* to determine whether there is a genuine issue of material fact and the law was applied correctly. *See* Fed. R. Civ. P. 56(c); *Lett v. Magnant*, 965 F.2d 251, 255 (7th Cir. 1992). Summary judgment is appropriate where, reviewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue of material fact that must be decided by a jury. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252-55 (1986); *Bell v. Duperault*, 367 F.3d 703, 707 (7th Cir. 2004); *Brademas v. Ind. Hous. Fin. Auth.*, 354 F.3d 681, 687 (7th Cir. 2004).

On appeal, RES challenges both the type of employees and the type of work included in the Graff Report. RES contends that the improper inclusion in the Graff Report of hours worked by certain managerial employees and the hours spent by RES employees performing work outside the scope of the CBA led to a significant overstatement of RES's liability.

A. Supervisory Employees

RES asserts that the Funds improperly included supervisory employees in the Graff Report. The Funds respond that the CBA unambiguously requires that contributions be made for supervisory employees who also have held nonsupervisory positions during the relevant time period. Indeed, the CBA provides that the bargaining unit includes:

> [P]ersons in the employ of an Employer who are supervisors as defined by the Labor Management Relations Act as amended; and who at one time were Employee members of the bargaining unit herein on whose behalf contributions were required to be made to the trust fund described [in other sections of the CBA].

RES does not dispute this provision of the CBA. To rebut this requirement, RES offers only Wiley Stewart's affidavit. Specifically, Stewart's testimony that:

> [T]wo of these RES employees who were included in the Second Audit, Donald Stewart and Adam Sulik, worked in supervisory positions for RES. Contrary to [Plaintiffs' Statement of Facts] plaintiffs are now seeking payment from RES for hours worked by those employees. [The Funds' Field Representative] had previously advised me that plaintiffs would remove those hours from the Second Audit but plaintiffs have not done so.

Issues of parol evidence aside, this testimony is not relevant to the appropriateness of including the hours worked by the former-employee supervisors in the auditor's calculations of unpaid contributions. The plain language of the CBA provides that former-employee supervisors are to be included in the bargaining unit. Stewart's testimony does not dispute that these two employees fall into that category nor does it provide any other legally cognizable reason why including them would be inappropriate under the CBA. Thus, RES's reliance on *Ill. Conference of Teamsters v. Steve Gilbert Trucking*, 71 F.3d 1361 (7th Cir. 1995) (finding that

facts contained in affidavit submitted by company's owner directly undermined the accuracy of auditor's calculations) was misplaced. Summary judgment was appropriately granted on this issue.

### B. Non-Covered Work

RES claims that the Graff Report includes hours spent by RES employees performing work outside the scope of the CBA. RES contends that the CBA only requires contributions for work relating to asbestos removal, but the Graff Report includes hours spent by RES employees on wholly unrelated work, such as maintenance of equipment and hauling activities. Therefore, RES argues, the Graff Report substantially overstates the number of hours worked by RES employees. In response, the Funds dispute that the CBA distinguishes between covered and non-covered work. Rather, the Funds contend that as long as an employee is covered by the CBA, then *all* work the employee performs is covered by the CBA. It is unnecessary for us to address this dispute because even if the CBA does differentiate between covered and non-covered work, RES has not produced sufficient evidence to establish that the Graff Report includes hours devoted to non-covered work.

The district court accurately applied Seventh Circuit law when it held that once the Funds presented the audit report and established an absence of company records contradicting the Graff Report, the burden was on RES to establish a genuine issue of material fact barring summary judgment. *See Chicago Dist. Council of Carpenters Pension Fund v. Reinke Insulation Co.*, 347 F.3d 262, 265 (7th Cir. 2003); *Laborers' Pension Fund v. A & C Envtl.*, 301 F.3d 768, 783 (7th Cir. 2002). An evidentiary burden is imposed on employers if a fund raises genuine questions about the accuracy of the employer's record-keeping practices. *Id.* As we explained in *Reinke*:

> [O]nce a pension or welfare fund shows that an employer's records are deficient and produces an apparently sound accounting suggesting that money is owed, the employer could be obliged to explain why its payments to the funds are nonetheless proper. If the explanation appears to be sufficient, then the fund must demonstrate at trial its entitlement to additional payment. Otherwise, in the absence of an explanation by the employer, the fund would prevail on summary judgment.

347 F.3d at 264-65.

Here, the Funds assert that RES kept no contemporaneous time records reflecting the type of work performed, the date the work was performed, or the work location. The Funds claim that this deficiency in record-keeping prevented the Funds' auditors from accurately determining the amount and type of work performed by RES employees. As the district court found, RES has not submitted any documents to contradict the Funds' assertions nor come forward with any evidence setting forth the hours worked on covered projects, or the laborers who were working on those projects.

Given the deficiency in records, to prevent summary judgment RES is "obliged to explain why its payments to the [F]unds are nonetheless proper." *Id.* at 264. On the issue of employees performing non-covered work, the Stewart affidavit states: "It has been my personal experience that the accounting firms who perform audits to verify the amount of contributions that may be owed regularly include employees and hours that are not covered by the [CBA]." The affidavit later identifies five employees and states that they "performed work not covered by the [CBA]." There is no specific information supporting these generalized and conclusory allegations. Indeed, the affidavit fails to introduce any factual assertion to dispute the audit's findings.

RES argues that the district court inappropriately found the Stewart affidavit to be insufficient evidence because it is an affidavit—RES misses the point. The Stewart affidavit is insufficient to prevent summary judgment because it provides no information raising an issue of fact. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990) ("The object of [summary judgment] is not to replace conclusory allegations of a complaint or answer with conclusory allegations of an affidavit."). Accordingly, summary judgment was properly granted to the Funds on this issue.

### C. Liquidated Damages, Interest, and Attorneys' Fees

RES claims that the district court erred in determining that RES owed the Funds payment of penalties, fees, and interest. We disagree. ERISA requires a court to award attorneys' fees and costs to a prevailing fiduciary in an action to collect delinquent contributions. 29 U.S.C. § 1132(g)(2). ERISA also permits the prevailing party to collect the interest on unpaid contributions plus liquidated damages as provided for under the plan. *Id.* RES has not presented any authority refuting the propriety of these awards. Accordingly, the judgment in favor of the Funds for liquidated damages, interest, audit costs, and attorneys' fees was proper.

### III. Conclusion

We AFFIRM the judgment of the district court.

**A true Copy:**

      **Teste:**

                       _____
                       *Clerk of the United States Court of*
                       *Appeals for the Seventh Circuit*