PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1377
_____

MARY C. HENDERSON, an individual,
on behalf of herself and all others similarly situated,
Appellant

v.

UPMC, doing business as
UNIVERSITY OF PITTSBURGH MEDICAL CENTER;
UPMC GROUP; UPMC PRESBYTERIAN SHADYSIDE;
UPMC SOUTHSIDE; UPMC ST. MARGARET;
UPMC MCKEESPORT; UPMC PASSAVANT;
UPMC BRADDOCK; UPMC HORIZON;
UPMC NORTHWEST; UPMC BEDFORD MEMORIAL;
MAGEE WOMENS HOSPITAL OF UPMC;
UPMC MERCY;
UPMC 401A RETIREMENT SAVINGS PLAN;
UPMC 403B RETIREMENT SAVINGS PLAN;
UPMC BASIC RETIREMENT PLAN

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 3-09-cv-00187)
Magistrate Judge: Honorable Cathy Bissoon
_____

Argued December 16, 2010

Before: SLOVITER, GREENAWAY, JR., and
GREENBERG, <u>Circuit Judges</u>

(Filed: April 5, 2011)
_____

R. Bruce Carlson
Gary F. Lynch
Carlson Lynch
New Castle, PA  16107

Ellen M. Doyle   (Argued)
Joseph N. Kravec, Jr.
William T. Payne
Stember, Feinstein, Doyle & Payne, LLC
Pittsburgh, PA  15219

Paul A. Lagnese
Berger Law Firm
Pittsburgh, PA  15219

David J. Manogue
Specter, Specter, Evans & Manogue
Pittsburgh, PA  15219

James M. Pietz
Pittsburgh, PA  15219

    Attorneys for Appellant

Mariah L. Klinefelter
John J. Myers   (Argued)
Andrew T. Quesnelle
Eckert, Seamans, Cherin & Mellott
Pittsburgh, PA  15219

    Attorneys for Appellee

_____

OPINION OF THE COURT
_____


SLOVITER, *Circuit Judge*.

Under Section 209(a)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1059(a)(1), an employer has an obligation to maintain records sufficient to determine the benefits due or which may become due to each of its employees. This appeal concerns the circumstances under which an employer can be held liable for failing to maintain such records. Appellant Mary Henderson brought this putative class action against the University of Pittsburgh Medical Center ("UPMC"), alleging that UPMC failed to keep records of the hours Henderson had worked. The District Court held that Henderson failed to state a claim because under the applicable employee benefit plans, UPMC was only required to keep records of wages paid and not hours worked. Henderson appeals.

## I.[1]

Henderson's Second Amended Complaint alleges that while employed as a registered nurse for UPMC, she and other nurses were required to work during their thirty-minute unpaid "meal breaks," but were never compensated for this work. App. at 31. In addition, UPMC began increasing the number of patients assigned to each nurse per shift. Nurses were allocated thirty minutes of paid time at the beginning of their shifts to review the status reports of the patients they would cover during the upcoming shift. The complaint alleges that as a result of the increased patient load, nurses such as Henderson had to begin arriving at work and

---

[1] We set forth only those facts that are relevant to our holding and, where we do so, we view them in the light most favorable to the appellant as set forth in her Second Amended Complaint.

3

reviewing the status reports twenty to forty minutes prior to the official start of their shift. Even though the nurses clocked in when they arrived, UPMC would not start crediting the nurses with paid work time until the official start of the shift. Henderson filed a lawsuit in state court alleging that UPMC violated the Pennsylvania Wage Payment and Collection law and the Pennsylvania Minimum Wage Act. *Henderson v. UPMC*, No. GD-09-13303 (Court of Common Pleas, Allegheny County, Pa. filed July 23, 2009).[2] That suit remains pending.

She also brought this ERISA action based on her participation in three retirement plans, all administered and sponsored by UPMC. Under the 401A and 403B Retirement Savings Plans, defined contribution plans which the parties refer to collectively as the "Savings Plan," plan participants may direct a percentage of their compensation to their individual savings accounts. Under those plans, after the employee has worked for a year UPMC will pay into the account of each participating employee a matching contribution equal to fifty percent of the amount of the participant's contribution, subject to a ceiling equal to a percentage of the participant's compensation. It follows that both the contributions of the participating employees and UPMC are based on a percentage of the "Participant's Compensation." App. at 221, 340. "Compensation" is defined as "the Employee's compensation as reportable on Box 1 of Form W-2." App. at 207, 324.

UPMC also offers a third plan, the Basic Retirement or Cash Balance Plan, which is a defined benefit plan funded entirely by UPMC. Each year in which a participant is paid for at least 1,000 hours of work, the participant earns retirement credits. Each retirement credit is based on a percentage multiplied by the participant's pay, with the

---

[2] Another nurse at UPMC filed a wage lawsuit under the Fair Labor Standards Act in federal court, *Camesi v. UPMC*, No. 09-CV-85-CB (W.D. Pa. filed Apr. 2, 2009). Henderson attempted to join this suit, but her claim was dismissed as untimely filed.

percentage being based upon the participant's age and years of service. The plan provides that "Retirement Credits shall be applied on the basis of the Employee's Compensation earned while an Active Participant" in the Cash Balance Plan during the Plan Year. App. at 521. "Compensation" here too is defined as "an Active Participant's compensation as reportable in Box 1 of Form W-2." App. at 502.

Henderson contends that these plans and the ERISA statute which controls them require that UPMC, as an employer, keep records of the uncompensated hours she worked and, as a fiduciary, to investigate and ensure that contributions allegedly corresponding to the hours worked were being provided so that the relevant fund can distribute benefits to Henderson when she retires. Specifically, she alleges that "UPMC failed to maintain records . . . sufficient to determine the benefits due," in violation of Section 209(a)(1) of ERISA. App. at 49. Henderson also claims that UPMC breached its fiduciary duty under Section 404(a), 29 U.S.C. § 1104(a), "to act prudently and solely in the interests of [Henderson and her coworkers] by failing to credit them with all hours worked for which they were entitled to be paid when calculating their pension benefits, or to investigate whether such hours should be credited." App. at 50. By way of remedies, Henderson seeks equitable relief pursuant to Section 502(a)(3), 29 U.S.C § 1132(a)(3), and "[a]ll applicable statutory benefits and contributions" pursuant to Section 502(a)(1)(B), 29 U.S.C § 1132(a)(1)(B). App. at 51.

UPMC moved to dismiss for failure to state a claim. Without deciding whether an employee can "shoe horn" a remedy for fair wage violations into an ERISA cause of action, the District Court granted the motion and dismissed the complaint with prejudice. The Court held that UPMC's recording and fiduciary obligations were limited by the plan language, which only required that UPMC document the wages Henderson was paid, not the hours she allegedly worked but was not paid. *Henderson v. UPMC*, No. 09-187J, 2010 WL 235117, at *3 (W.D. Pa. Jan. 11, 2010).

5

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim. *Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir. 2009). In so doing, we must accept all well-pleaded factual allegations contained in the complaint as true and construe the complaint in the light most favorable to Henderson. *See id.*

## III.

ERISA permits employers who are also pension plan administrators to wear separate "hats" and imposes different duties on them depending on whether they are acting as employers *qua* employers or employers *qua* administrators. *Varity Corp. v. Howe*, 516 U.S. 489, 498 (1996). When acting as the plan administrator, ERISA imposes fiduciary duties "to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 571 (1985); s*ee also* 29 U.S.C. § 1104(a)(1) ("[A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.").

Conversely, when making business or employment decisions, ERISA permits an employer *qua* employer to make decisions in its interest, rather than the interest of plan participants. *See Varity Corp.*, 516 U.S. at 498. That said, ERISA contains a limited number of separate "employer" duties wholly apart from any fiduciary obligations an employer may incur while serving as a fiduciary. Section 209 is one of these employer duties. Section 209(a) provides that "every employer shall . . . maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." Subsection (b) provides that if "any person who is required, under subsection (a) [of this section], to furnish information or

6

maintain records for any plan year fails to comply with such requirement, he shall pay to the Secretary [of Labor] a civil penalty of $10 for each employee with respect to whom such failure occurs."

Cognizant of the different roles that an employer may play, we easily conclude, in this case, that UPMC has a duty as an employer to keep records sufficient to accurately determine what benefits are due or may be due to plan participants and, as a fiduciary, a duty to ensure that contributions were being properly provided to the plan by the employer.  But the extent of those duties and the nature of the records required to be maintained can only be determined by looking to the language of the pension plans themselves, which outline the contributions the employer must make and, correspondingly, the benefits the participants are owed.

In so holding, we join the several other courts that have determined the scope of the Section 209 record-keeping duty, and its fiduciary corollary, by evaluating how contributions are allocated under the pension plan.  *See Trs. of the Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 786 (7th Cir. 2007) (evaluating scope of Section 209 record-keeping duty by looking to plan language); *Mich. Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*, 30 F.3d 692, 697 (6th Cir. 1994) (same); *Combs v. King*, 764 F.2d 818, 825 (11th Cir. 1985) (same); *Zipp v. World Mortg. Co.*, 632 F. Supp. 2d 1117, 1125 (M.D. Fla. 2009) (same); s*ee also Mathews v. ALC Partner, Inc.*, No. 08-cv-10636, 2009 WL 3837249, at *3-7 (E.D. Mich. Nov. 16, 2009) (evaluating scope of fiduciary duty by looking to plan language); *Steavens v. Elec. Data Sys. Corp.*, No. 07-14536, 2008 WL 3540070, at *4 (E.D. Mich. Aug. 12, 2008) (same).

We look to the plans, three of which are relevant here. As discussed, under the two Savings Plans, contributions from both the employee and the employer are linked to a percentage of the employee's compensation.  Compensation is defined as "the Employee's compensation as reportable on Box 1 of Form W-2."  App. at 207, 324.  Similarly, under the

7

Basic Retirement Plan "Retirement Credits shall be applied on the basis of the Employee's Compensation earned while an Active Participant with a Cash Balance Employer during the Plan Year," App. at 521, and "Compensation" is defined as "an Active Participant's compensation as reportable in Box 1 of Form W-2," App. at 502.

Compensation reportable in Box 1 of Form W-2 is undeniably compensation paid. *See* 26 U.S.C. § 6051(a) (requiring employers to send Form W-2 to each employee outlining "the remuneration paid by [the employer] to such employee during the calendar year"); App. at 953 (IRS Instructions for Forms W-2 and W-3, providing: "**Box 1— Wages, tips, other compensation**. Show the total taxable wages, tips, and other compensation (before any payroll deductions) that you paid to your employee during the year."). An employee does not have to report to the IRS or pay taxes on compensation that she never receives, and an employer does not have to report compensation that it never paid.

Based on this plain plan language, we conclude that contributions owed by UPMC are calculated based on compensation paid to the employees and not based on uncompensated hours worked. Henderson's focus on language other than these straightforward definitions is misguided. *See Fields v. Thompson Printing Co.*, 363 F.3d 259, 268 (3d Cir. 2004) (declining to look beyond plain language of employment agreement when determining liability under ERISA).

First, Henderson emphasizes that the Basic Retirement Plan links retirement credits to "Compensation *earned*." App. at 521 (emphasis added). But, as UPMC properly points out, the use of the word "earned" by itself does not modify the definition of Compensation, which is limited to W-2 reportable compensation, that is, compensation actually paid. Appellees' Br. at 19. Moreover, in the face of the plans' clear definitions for compensation, there is no basis for Henderson's conclusion that "earned," in this context, means "hours worked." Second, Henderson contends that

8

"compensation as reportable in Box 1 of Form W-2" is conditional, and that reportable means "the compensation that **should have been** paid and reported under the law." Appellants' Br. at 33 (emphasis in original). Again, compensation is only reportable, and required to be reported under the law, if it is actually paid. Accordingly, Henderson's attempts to strain certain words or phrases as requiring that contributions be made based on hours worked are to no avail.[3]

Our interpretation of the plan language in this case is consonant with the interpretation of similar language by other courts. *See Zipp*, 632 F. Supp. 2d at 1125 (holding that plan which defined compensation as "amounts paid by an Employer to an Employee" meant that the employer was not required to document amounts "earned"); *Mathews*, 2009 WL 3837249, at *5 (holding that plan, which based contributions on compensation as reported on Form W-2, meant compensation actually paid to employee); *Steavens*, 2008 WL 3540070, at *4 (holding that plan which tied contributions to "earnings actually paid to an Employee by an Employer during a calendar year and reported on the Federal income tax withholding statement" meant compensation actually paid to employee).

In contrast, when courts have held that an employer must keep track of hours worked, the plan language has been quite explicit in linking contributions to hours worked. *See*

---

[3] We note that under the Basic Retirement Plan, an employee is not eligible for Retirement Credits unless s/he has been "paid for 1000 hours of service." App. at 96. Arguably, this means that an employee's access to benefits is contingent on working 1,000 hours. However, this initial threshold does not alter the fact that retirement credits, and the benefits associated with them, are based on an employee's pay or compensation. Nor does Henderson allege that she or any of her purported class members were prevented from satisfying the 1,000-hour threshold as a result of UPMC's hour and wage practices. Significantly, the 1,000-hour requirement is still linked to "paid" hours of service.

*Trs. of the Chi. Painters & Decorators Pension*, 493 F.3d at 786 ("The collective bargaining agreement in this case required [the employer] to contribute benefits based on the hours worked."); *Mich. Laborers' Health Care Fund*, 30 F.3d at 694 (under the collective bargaining agreement, the employer "was required to make payments to each of the Funds for employees performing 'covered' concrete-pouring work"); *Combs*, 764 F.2d at 820 (plan specifically based employer contributions on "hours worked" by employees). The plans here contain no such language.[4]

Accordingly, in this case, the records "sufficient to determine the benefits due" under Section 209 are the records of the employee's compensation actually paid. Nowhere is it alleged that UPMC in anyway failed to keep track of the compensation it did, in fact, pay to Henderson or her coworkers. Indeed, as outlined above, based on an employer's payroll tax obligations to keep track of and report employee compensation paid, it is unlikely such a claim could be credibly made. Moreover, because Henderson has failed to state a Section 209 claim against UPMC, any related claim that UPMC failed its fiduciary obligation under Section 404 to investigate and ensure that contributions were being accurately provided to the fund also fails. *Ipso facto*, to the extent Henderson is attempting "to recover benefits due to [her] under the terms of [her] plan" from UPMC as a fiduciary pursuant to Section 502(a)(1)(B) or seek injunctive relief under Section 502(a)(3), her claim fails because the

---

[4] Henderson urges us to follow *Gerlach v. Wells Fargo & Co.*, No. C05-0585 CW, 2005 U.S. Dist. LEXIS 46788, *6-8 (N.D. Cal. June 13, 2005), where, notwithstanding that the plan linked contributions to compensation paid, the court held that the employer was obligated to keep track of overtime that was never paid. As evidenced by the long list of cases holding to the contrary, *Gerlach* is an outlier in refusing to follow the plan language and we decline to follow it.

10

plan links contributions and benefits due to compensation paid.[5]

In so holding, we are careful to note that our decision does not prevent Henderson from bringing a subsequent action pursuant to ERISA Section 502(a)(1)(B) to recover benefits associated with any unjustly withheld compensation that she receives if she is successful in her state wage lawsuit. Indeed, at oral argument, UPMC agreed that were it to be established in state court that Henderson should have been paid for the additional hours she alleges, UPMC will make the corresponding contributions to these plans. Were that to eventuate, Henderson would then have been paid reportable W-2 compensation to which contributions are linked. Accordingly, we see no reason to disturb the District Court's ruling dismissing the complaint with prejudice with respect to Henderson's claims for violations of Section 209 and any corollary fiduciary responsibility to monitor and ensure that contributions are being accurately provided. However, as just stated, Henderson retains the right to bring a claim for benefits under Section 502(a)(1)(B), if and when she is successful in her state wage lawsuit.

Finally, having affirmed the District Court's dismissal for the above stated reasons, we need not reach the alternative issue raised by UPMC: whether plan participants are entitled to bring a separate cause of action for violations of Section 209.

**IV.**

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[5] Henderson argues that because UPMC does not maintain records of the hours she claims to have worked, she may receive reduced pension benefits were she to prevail in her state court actions. UPMC correctly responds that it has no responsibility to maintain such records under ERISA and under its plans.

11